**Appeal No. 23-35510**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

JAMES PARKER,
*Plaintiff-Appellant*,

v.

CHRISTINE WORMUTH,
SECRETARY, U.S. DEPARTMENT OF THE ARMY,
*Defendant-Appellee*.

---

**APPELLANT'S REPLACEMENT OPENING BRIEF**
ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON,
No. 3:22-cv-01451-IM, Hon. KARIN J. IMMERGUT

---

PETER AFRASIABI
One, LLP
23 Corporate Plaza, Suite 150-105
Newport Beach, CA 92660
T: 949-502-2871
pafrasiabi@onellp.com

JULIUS P. ELBERFELD
NEIL K. VERMANI
U.C. Irvine School of Law
Ninth Circuit Appellate Litigation Clinic
401 East Peltason Drive, Suite 1000
Irvine, CA 92697
Certified Law Students

KATHRYN MARIE DAVIS
Law Office of Kathryn M. Davis
530 South Lake Avenue, Suite 425
Pasadena, CA 91101
T: 626-356-8059
Kathryn.davis@kmdavislaw.com

*Counsel for Appellant James Parker*

i

# TABLE OF CONTENTS

**Page**

TABLE CONTENTS…….…………………………..……………….…..………...ii

TABLE OF AUTHORITIES ...................................................................iv

INTRODUCTION ....................... …………………………………………....1

JURISDICTIONAL STATEMENT ............... ………………………………3

ISSUES PRESENTED......................................…………………3

Parker Works As a Small Craft Operator With USACE (2018-2019) ......................4

Parker Reapplies For His Position With USACE And Is Rejected .........................5

Parker Exhausts His Administrative Remedies .......................................9

Parker Files a Complaint, The District Court Dismisses Under FRCP12(b)(6)........9

SUMMARY OF THE ARGUMENT .....................................................10

STANDARDS OF REVIEW ...........................................................14

 ARGUMENT ...........................................................................15

I. Parker Stated a Claim Under the Adminstrative Act ...........................................15

A. Parker's Complaint Provides a Short and Plain Statement of His Claim and Sufficient Factual Allegations to Suggest His Entitlement to Relief. ...................16

 1. Parker Has a "Record of" Diabetes…………….…………...…….…..………….19

 2. Geye, Russell and Stewart "regarded" Parker as disabled after they learned of his diabetes diagnosis………………………………………………………………21

ii

3. The Panel's Perceptions of Parker's Diagnosis Led It to Treat Him Differently Than Other Non-disabled Candidates in the Hiring Process...…………………….22

B. Contrary to This Court's Precedent, The District Court Applied Heightened Pleading Standards to The Complaint…………….……………………………26

1. The District Court Held Parker to An Evidentiary Burden - Not A Pleading Standard……………………………..…………….…………………………………27

2. The District Court's Analysis of the Prima Facie Case Suffers From the Same Error……………………………………………………………………………31

3. The District Court Failed to Consider Parker's Record of Disability………….33

4. The District Court Erred in Its *Starr* Two-Step Analysis………………....…34

C. Even Though *McDonnell Douglas* Does Not Apply At the Pleading Stage, Parker States a Claim Under That Standard Too…………………………………36

II**.** Parker Stated a Claim Under the ADEA...............................................................37

A**.** Parker's Complaint Sets Forth a Short and Plain Statement of His Age Discrimination Claim That Plausibly Suggests His Right to Relief.......................38

B**.** Contrary to This Court's Precedent, The District Court Incorrectly Applied a Heightened Pleading Standard to Parker's ADEA Claim .......................................44

1**.** As The District Did With Parker's Rehabilitation Act Claim, It Held Parker's ADEA Claim To An Evidentiary Burden Rather Than The Approriate Pleading Burden ....................................................................................................................44

2. The District Court's Imposition of An Evidentiary Burden At The Pleading Stage Led to the Application of a Rigid Prima Facie Standard…………………………47

III.The District Court Incorrectly Considered Evidence Outside the Complaint…49

IV. If This Court Affirms The District Court's Opinion and Order on Either Claim, It Should Grant Parker Leave to Amend………………………………………53

V. Parker's Complaint is Timely……………………………………………..…54

iii

CONCLUSION ............................................................................................56

CERTIFICATE OF WORD COUNT ....................................................................57

CERTIFICATE OF COMPLIANCE ......................................................................58

## TABLE OF AUTHORITIES

**Cases**

*Austin v. Univ. of Or.*, 925 F.3d (9th Cir. 2019)……………………..17, 27, 29, 45

*Bell Atl. Corp. v. Twombly*, 550 U.S. (2007)………11, 13, 26, 27, 28, 36, 39, 43

*Boyd v. USPS*, 752 F.2d 9th Cir. 1985)………………………………………………16

*Branch v. Tunnell*, 14 F.3d 449 (9th Cir. 1994)…………………………………49

*Brown v. Stored Value Cards, Inc.*, 953 F.3d 567 (9th Cir. 2020)………………15

*Coons v. Secretary of U.S. Dep't of Treasury*, 383 F.3d 879
(9th Cir. 2004)………………………………………………………………16, 20, 31

*Cotton v. City of Alameda*, 812 F.2d 1245 (9th Cir. 1987)..………..……14, 47, 48

*Davis v. HSBC Bank Nev., N.A., 691 F.3d (9th Cir. 2012)*………………………14

*Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d (9th Cir. 2008)………………..39, 45

*Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027 (9th Cir. 2005)……30

*Erickson v. Pardus*, 551 U.S. (2007) …………………………………………...33, 52

*France v. Johnson*, 795 F.3d 1170 (9th Cir. 2015)…………………………..39, 48

*Grajales v. Puerto Rico Ports Authority*, 682 F.3d 40 (1st Cir. 2012)…………..43

*Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977)…………………..47

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018)………15, 31

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) ………………14, 51, 52

*Levitt v. Yelp! Inc.*, 765 F.3d 1123 (9th Cir. 2014)…………………………18, 29

*Lucas v. Dep't of Corrections*, 66 F.3d 245 (9th Cir. 1995)……………………53

*Mattioda v. Nelson*, 98 F.4th 1164 (9th Cir. 2024)……………………..…..28, 35

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)………….11, 17, 27, 29

*Missirlian v. Huntington Mem'l Hosp.*, 662 F.2d 546 (9th Cir. 1981)…54, 55, 56

*Murray v. Mayo Clinic*, 934 F.3d 1101 (9th Cir. 2019)…………………25, 29

*Nunies v. HIE Holdings, Inc.*, 908 F.3d (9th Cir. 2018)………………...32, 35

*Postal Service Bd. of Governors v. Aikens*,
460 U.S. 711 (1983)……………………………………………………17

*Rohr v. Salt River Project Agric. Improvement & Power Dist.*,
555 F.3d (9th Cir.2009)……………………………………………19, 33

*Sakellar v. Lockheed Missiles & Space Co.*, 765 F.2d
1453 (9th Cir.1985)……………………………………………………48

*Sheppard v. David Evans & Associates*, 694 F.3d
(9th Cir. 2012)…………………………………………38, 39, 40, 41, 42, 48

*Socal Recovery, LLC v. City of Costa Mesa*, 56 F.4th 82 (9th Cir. 2023)……….82

*Swanson v. Citibank., N.A.*, 614 F.3d 400 (7th Cir. 2010)………………………43

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)…………………….......11, 17

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011)……………………...11,13, 14, 18, 34

*Shields v. Credit One Bank, N.A.*, 32 F.4th 1218 (9th Cir. 2022)………...14, 20, 52

*Watson v. Fort Worth Bank & Trust*, 487 U.S. (1988)…………………15, 19, 23

**Rules**

FRCP 12(6)(b)……………………………………………………………2, 10, 40

FRCP 8(a)(2)………………………………………………..10, 12, 17, 18 , 21, 26

vi

## INTRODUCTION

Congress designed the Rehabilitation Act of 1973 and the Age Discrimination in Employment Act of 1967 to protect workers from precisely the kind of discrimination that Appellant, James Parker, experienced here.

After he was diagnosed with diabetes, Parker resigned from his position as a Small Craft Operator, which involved captaining boats, with the U.S. Army Corps of Engineers. His diagnosis prevented him from recertifying his required Captain's license. After managing his condition through assiduous self-discipline, he reapplied to his former position. Given his previous "Fully Successful" performance, Parker expected his revitalized credentials to position him as the top candidate. Yet, to his dismay, Parker was ranked last among four candidates. Non-disabled and younger candidates were offered employment in his place.

After Parker filed his disability and age discrimination claims against the Secretary of the Army, Christine Wormuth, the district court dismissed his Complaint under FRCP 12(b)(6), evaluating it under heightened evidentiary standards. Rather than allowing Parker to proceed, the district court demanded proof that is only required after discovery—not at the outset of litigation.

Pleading standards are more lenient than evidentiary standards for a reason: to prevent cases from being dismissed before plaintiffs have the chance to substantiate their claims through discovery. In contrast, evidentiary standards exist

1

to govern summary judgment and trial—where the focus shifts from plausibility to proof. The district court, however, conflated these distinct procedural phases, applied summary judgment law, and dismissed Parker's Complaint prematurely.

The district court's analysis also inappropriately considered material outside of the Complaint. Parker's Complaint stands on its own—as it must. And to the extent Wormuth's Motion to Dismiss was converted to one for summary judgment, the district court failed to give the *pro se* Parker adequate notice and a reasonable opportunity to present his own external evidence.

This Court should correct these errors, reverse the district court's judgment, and remand for further proceedings consistent with its reversal. If, however, this Court affirms the district court's judgment on either Parker's disability or age discrimination claim, he should be afforded leave to amend that claim, while any reversed claim should proceed accordingly.

## JURISDICTIONAL STATEMENT

The district court had original jurisdiction under 28 U.S.C. § 1331 and this Court has jurisdiction under 28 U.S.C. § 1291. The district court entered final judgment on June 1, 2023, after granting Appellee's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). ER-4. Appellant timely filed his Notice of Appeal on July 25, 2023. ER-126; *see* Fed. R. App. P. 4(a)(1)(B).

2

**ISSUES PRESENTED**

1.  Whether the district court erred in holding that Plaintiff failed to state a claim under section 501 of the Rehabilitation Act of 1973 for disability discrimination when his interviewers knew of and/or perceived his disability, made comments reasonably implicating his disability during a job interview, ranked him last in their hiring recommendation, and hired a non-disabled candidate.

2.  Whether the district court erred in holding that Plaintiff failed to state a claim under the Age Discrimination in Employment Act of 1967 when he was at least 40 years old, had a documented work record of satisfactory or better performance in his previous tenure with the employer, was denied an opening for the same position upon reapplication, and was ranked below three candidates who were younger than him despite his qualifications which, along with other facts, alleged circumstances otherwise giving rise to an inference of age discrimination.

**STATEMENT OF THE CASE[1]**

Appellant James Parker ("Parker"), now 61, is a citizen of Warrenton, Oregon. ER-115. Appellee Christine Wormuth ("Wormuth"), in her official capacity as Secretary of the United States Army, oversees multiple branches of the Army including the United States Army Corps of Engineers ("USACE"). *Id.*

---

[1]    As this is an appeal from an order of dismissal under FRCP 12(b)(6), we state the facts as alleged by the Complaint at ER-114-122.

This case involves two claims of discrimination filed by Parker against Wormuth claiming that USACE violated (1) the Rehabilitation Act of 1973 ("Rehabilitation Act") and (2) the Age Discrimination in Employment Act of 1967 ("ADEA") when it refused to rehire Parker as a Small Craft Operator in July 2020. ER-114. He asserts disparate treatment. *See id.*

### Parker Works as a Small Craft Operator with USACE (2018-2019)

Parker, then a 54-year-old veteran of the United States Armed Forces, began his employment with USACE as a Small Craft Operator in March 2018. ER-116. That position involved operating and captaining boats on the Columbia River. *See* ER-120. Parker's qualifications for operating boats included (1) over 50 years of firsthand knowledge of the Columbia River, which is crucial to USACE's mission; (2) at least 20 years of experience operating a wide array of boats; and (3) a Captain's license. *See* ER-116–17, 120.

In 2019, Parker received a "Fully Successful" rating on his performance evaluation. ER-117. In addition, Jesse Allen, who worked closely with Parker during his employment, characterized Parker as a "really hard worker" who "put in overtime when that was called for." ER-122. According to the Complaint, Allen did recall a time when he and Parker had to "turn [their boat] around in order to get [Parker's] diabetes medication." ER-121–22. Despite this anecdote, according to

4

Allen, Parker "accomplished the mission," and he "would work with [Parker] again if the opportunity arose." ER-122.

Parker was diagnosed with diabetes in 2018. ER-116. In mid-2019, Parker could not renew his Captain's license because his diagnosis prevented him from passing the required physical exam. ER-117. Therefore, in June 2019, Parker voluntarily resigned his position due to his "high blood-sugar, which caused [him] not to be able to sail on the ship." ER-117¶21.

As will become important later, Parker's second-level supervisor Steven Russell ("Russell") and Parker's colleague Daniel Geye ("Geye") were both aware that Parker lost his Captain's license and resigned because of his diabetes. ER-121.

### Parker Reapplies for His Position with USACE and is Rejected

In 2020, Parker, soon to be 57, reapplied for the Small Craft Operator position which he previously held. *See* ER-117. In less than a year, Parker lost 60 pounds, controlled his blood sugar, and was able to control his diabetes to the point where he was able to reinstate his Captain's license. *See* ER-116–17.

On July 6, 2020, Parker, now 57, was selected to be interviewed by a three-person panel. ER-117. The panel included Daniel Geye, Allen Stewart ("Stewart"), and Richmond Boyce. *Id.* During Parker's previous employment, Stewart was Parker's first-level supervisor, and Geye was Parker's coworker. ER-117, 119. The "selecting official" for the job opening was Russell, Parker's former second-level

5

supervisor. ER-119. While Parker's diabetes was no longer interfering with his ability to work, Parker was perceived as having diabetes by Russell. ER-116¶14.

Four candidates were interviewed for the position, including Parker. ER-117–18. None of the other candidates had the same level of experience navigating the Columbia River as Parker did. ER117-120. Parker grew up on the Columbia River and knew the river "more than most of his colleagues." ER-117¶23.

In the interview, among other comments, Stewart and Geye "emphasized the safety concerns related to [Parker's] disability, alleging that his crew did not feel safe riding [his] boat." ER-121 Parker, having worked under Stewart (panelist) and Russell (selecting officer) in his last post, felt that "[Russell] was the best reference [he] could have" and so did not submit any references in his resume. ER-119-120 ¶¶50-53. The vacancy announcement did not require references. ER119¶49.

On July 7, 2020, Daniel Geye emailed Steven Russell to notify Russell of his personal recommendations for selection. ER-117. Despite Parker applying for the same position he previously held for over a year, ER-116, Geye ranked Parker, the only candidate entitled to Veterans' preference, last place out of the four interviewees. ER-117–18. Parker was ranked behind Mark McCaughn ("McCaughn"), Paul Gunis ("Gunis"), and Christian Kanschat ("Kanschat"). ER-117–18. Kanschat, ranked first, never worked as a Small Craft Operator, had no experience navigating the Columbia River as Parker did, had no known or

6

perceived disability, and was at least 7 years younger than Parker. ER-118¶¶29-34. Gunis, ranked second, had no experience with small boats in shallow waters or coastal regions and no experience navigating the Columbia River and instead had worked in management and human relations for 25 years, had no known or perceived disability, and was at least 7 years younger than Parker. ER-119¶¶35-41. McCaughn, ranked third, had "no known navigation experience," had no known perceived disability, and was at least 7 years younger than Parker. ER-119¶¶42-46.

Despite Parker's documented qualifications and "Fully Successful" performance rating in the exact same position, Geye had "nothing positive to say" about Parker in his email to Russell. ER-117, 119. In the email, Geye stated that Parker "did not demonstrate the ability to follow full spectrum of comprehensive small craft safety." ER-118. No specific examples of safety issues were cited. Geye noted Parker's failure to provide references, even though none were required or requested. ER-119¶¶47-48. Geye did not mention Parker's tenure as a Small Craft Operator, his positive performance review, decades of experience navigating the Columbia River, or Veteran's preference. ER-120-21¶¶55-69. Most significantly, Geye did not mention Parker's knowledge or experience navigating the Columbia River, which was the most relevant requirement, and credited the other candidates' "marine" experience, which is not required for the job. ER-120¶¶64-69.

On July 21, 2020, USACE formally notified Parker that he would not be rehired as a Small Craft Operator. ER-116. Geye's first-choice, Kanschat, was offered the position but declined. ER-118¶29. USACE hired Geye's second-choice, Gunis, who was terminated within a year. ER-119¶35.

Parker alleges that Geye and Russell "would have . . . selected" Parker "but for the perceived disability that [they] had of him and . . . his age." ER-121¶70. Parker alleged that "[a]lmost all panelists emphasized the safety concerns related to [Parker's] disability, alleging that his crew did not feel safe riding in [Parker's] boat." ER-121¶71. Yet, none of the panelists had ridden in a boat with Parker. ER121-¶81. Allen, who did ride with Parker, recalled one incident where Parker had to turn around to get his diabetes medication, and then went back out again. 121-122¶82. Allen recalled no other incidents and that Parker's job performance was "very positive" and that he would work with him again. ER-122¶84.

Stewart later recalled that Parker had "wrecked his car on his way to work" during his prior employment (before his diabetes was under control). ER-121¶72. No such incident was mentioned in the panelists' notes. Russell and Geye both noted Parker's prior inability to pass the physical exam and renew his Captain's license on the basis of his then-uncontrolled diabetes. ER-121¶¶73-74. Geye later stated that he "questioned" Parker's ability to concentrate, but no such concerns were documented in Geye's written recommendation. ER-121¶75-76.

8

**Parker Exhausts His Administrative Remedies**

On August 6, 2020, Parker contacted an Equal Employment Opportunity ("EEO") field office to file an informal EEO complaint regarding USACE's refusal to rehire him. ER-122. On September 14, 2020, Parker filed a formal EEO complaint alleging USACE's refusal to rehire him was a discriminatory hiring decision based on his disability (diabetes) and his age (57). *Id.*; ER-53, 57.

Administrative Judge Cox issued a Notice of Intent to Issue Summary Judgment on April 15, 2022. ER-71. Parker responded, arguing, *inter alia*, that summary judgment was inappropriate because he had not been given a chance to conduct discovery "to supplement the incomplete record" and that further inquiry into the legitimacy of the panelists' assessments must be explored. ER-76. Parker further argued there were disputed questions of fact regarding the reasons he was denied employment. ER-77-84. Administrative Judge Cox determined that Parker had not demonstrated a need for discovery and issued a Decision and Order Entering Judgment for the Department of the Army on May 12, 2022. ER-87.

**Parker Files a Complaint, the District Court Dismisses under FRCP 12(b)(6)**

On September 27, 2022, Parker filed a Complaint *pro se* in the U.S. District Court for the District of Oregon alleging he was discriminated and retaliated against based on disability (diabetes) and age (57), in violation of the Rehabilitation Act and ADEA, respectively, when USACE refused to rehire him.

ER-114. Parker alleged that based on his perceived disability and age, he was denied the position he sought as a Small Craft Operator, despite the fact that he was the best qualified candidate for the position. ER-116-¶15.

On December 6, 2022, Wormuth filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). ER-96. On December 20, 2022, Parker filed a Response to Wormuth's Motion. ER-17. On April 19, 2023, Judge Immergut issued an Opinion and Order Granting Defendant's Motion to Dismiss on all discrimination and retaliation claims pled by Parker, with leave to amend. ER-5–16. Parker did not file an amended complaint. On June 1, 2023, Judge Immergut entered Judgment dismissing the matter with prejudice. ER-4.

Parker timely filed a Notice of Appeal on July 25, 2023. ER-126–28.

## SUMMARY OF THE ARGUMENT

Parker stated a claim under section 501 of the Rehabilitation Act. The district court erred when it held otherwise. Parker's Complaint contains sufficient factual allegations according to Federal Rule of Civil Procedure 8(a)(2) to plausibly suggest his entitlement to relief for his disability discrimination claim.

First, Parker adequately pled that he satisfies the definition of having a "disability" under the ADA because he has both a "record of" diabetes and was "regarded as" having diabetes by Geye, Russell, and Stewart. Next, Parker alleges that Geye, Russell, and Stewart all made comments suggesting that their perception

10

of Parker's disability influenced their decision to rank him last in their hiring recommendation. This led Parker to be passed over for a job he previously held while non-disabled candidates received offers of employment. Parker therefore states a claim under section 501 of the Rehabilitation Act for disparate treatment.

The district court erred in its legal analysis and its conclusion to dismiss. It failed to apply a pleading standard and, instead, held the Complaint to heightened evidentiary standards more appropriate at summary judgment or trial. For example, to survive Appellee's Motion to Dismiss, the court required Parker to plead facts making out a prima facie case of discrimination under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). But that exact mode of analysis was rejected by the Supreme Court in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) and reaffirmed in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007).

The district court amplified its error when it continued to apply summary judgment standards to the first element of Parker's prima facie case: whether he is disabled under the ADA. It also failed to consider his "record of" disability. 42 U.S.C. 12102(1)(B). Moreover, it failed to apply this Court's two-step analysis for assessing the sufficiency of a complaint. That analysis requires a court to first determine which allegations are entitled to the presumption of truth. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Next, it decides whether those facts plausibly suggest an entitlement to relief. *Id.* To the extent the district court engaged in that

11

analysis, it improperly labeled facts as legal conclusions and failed to make all reasonable inferences in favor of Parker.

Finally, even though it was legal error to require Parker's Complaint to allege a prima facie case of discrimination at the 12(b)(6) stage, he carried that burden. He alleges sufficient facts to conclude that (1) he is disabled or perceived as such under the ADA; (2) he applied for a job he was qualified to perform; (3) he was rejected from the job; and (4) other non-disabled candidates received more favorable treatment. This Court should therefore reverse the district court's dismissal and reinstate Parker's claim under section 501 of the Rehabilitation Act.

Parker also stated a claim under the Age Discrimination in Employment Act. The district court erred when it held otherwise. Parker's Complaint contains sufficient factual allegations according to Federal Rule of Civil Procedure 8(a)(2) to plausibly suggest his entitlement to relief for his age discrimination claim.

First, Parker adequately pled that he was a member of the class the ADEA intended to protect, stating that he was 57 years old when he interviewed for his former position as Small Craft Operator with USACE. Second, Parker sufficiently demonstrated that he was qualified for the position, pleading both that he received a "Fully Successful" rating in the same role during his previous tenure with USACE, and one of his closest coworkers during that tenure Jesse Allen approved of his performance. Third, Parker noted that USACE refused to rehire him and

12

notified him of his non-selection in July 2020. Fourth, Parker provided an allegation that all three candidates ranked ahead of him by Geye were not only younger than him, but at least seven years younger than him. This allegation plausibly gives rise to an inference of age discrimination.

The district court erred in its legal analysis and conclusion to dismiss. It failed to apply a pleading standard, and in its place, held Parker's Complaint to an evidentiary standard appropriate at summary judgment or trial. As above, the court required Parker to establish a prima facie case of discrimination under *McDonnell Douglas Corp.*, 411 U.S. 792. But that exact mode of analysis was rejected by the Supreme Court in *Swierkiewicz*, 534 U.S. 506, and *Twombly*, 550 U.S. 544.

The district court amplified its error when it imposed upon Parker an inflexible prima facie formulation. As held in *Swierkiewicz*, the specific prima facie formulation varies with context, and is not supposed to be inflexible. 534 U.S. at 506-07. Nonetheless, the district court utilized the rigid prima facie case articulated in *Cotton v. City of Alameda*, 812 F.2d 1245, 1248 (9th Cir. 1987). Due to the district court's amplification of its initial error, Parker had to not only overcome a heightened pleading standard by having to meet an evidentiary burden at the pleading stage, but he also had to meet a higher evidentiary burden than warranted based on the facts of this case. Thus, reversal is warranted.

13

Parker asserts three additional points on appeal. First, the district court abused its discretion in granting Wormuth's request to judicially notice materials outside the Complaint. Second, this Court should grant Parker leave to amend his Complaint if it affirms the district court's dismissal of either claim. Finally, the district court properly found that Parker's Complaint was timely because Parker was not given sufficient notice of his right to file a civil suit in federal court.

## STANDARDS OF REVIEW

This Court reviews *de novo* a district court's order granting a motion to dismiss for failure to state a claim. *Starr*, 652 F.3d at 1205 (citation omitted). The Court must take as true the operative complaint's well pleaded allegations and draw all reasonable inferences in favor of Parker. *See Shields v. Credit One Bank, N.A.*, 32 F.4th 1218, 1220 (9th Cir. 2022) (citations omitted).

Pleadings submitted *pro se* are liberally construed and held to less stringent standards than formal pleadings by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice.")) (citation omitted).

This Court reviews consideration of materials outside the complaint for abuse of discretion. *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) (applying abuse of discretion standard to both judicial notice and incorporation by reference doctrines); *but see Lee v. City of Los Angeles*, 250 F.3d

14

668, 690 (9th Cir. 2001) (holding district court "erred" in its de novo review of a motion to dismiss for wrongly reviewing material outside the complaint). Similarly, the Ninth Circuit reviews denials of leave to amend the complaint for abuse of discretion. *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 573 (9th Cir. 2020). However, this Court has liberally granted leave to amend even after affirming a dismissal when that dismissal is based on incorporation of materials outside the complaint. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1018, 1011 n.11 (9th Cir. 2018) (affirming dismissal of complaint but granting leave to amend even when plaintiff decided not to amend in the district court).

**ARGUMENT**

**I.     Parker Stated a Claim Under the Rehabilitation Act.**

Parker stated a claim of disability discrimination under section 501 of the Rehabilitation Act of 1973 according to a disparate treatment theory. *See* 29 U.S.C. § 791. The Complaint contains sufficient factual allegations, taken as true, to plausibly suggest his entitlement to relief. The district court erred when it held otherwise after applying a flawed pleading standard. In short, the district court erroneously applied summary judgment standards to a motion to dismiss. After applying the wrong law, the district court arrived at the wrong conclusion. Under the less onerous and correct standard, the Complaint contains all that is required under the law: a short and plain statement showing that Parker is entitled to relief.

15

### A. Parker's Complaint Provides a Short and Plain Statement of His Claim and Sufficient Factual Allegations to Suggest His Entitlement to Relief.

Parker's Complaint adequately alleges a claim for disability discrimination against Wormuth for disparate treatment under section 501 of the Rehabilitation Act of 1973, ("Rehabilitation Act"). 29 U.S.C. §§ 701, *et seq*. Section 505(a)(1) of the Rehabilitation Act, which incorporates the "remedies, procedures, and rights" of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-16, provides Parker with a private right of action under section 501. 29 U.S.C. § 794a(a)(1); *Boyd v. USPS*, 752 F.2d 410, 412 (9th Cir. 1985). That claim may be brought against the Army. 29 C.F.R. § 1614.103(b)(1) (2024); *see also* 5 U.S.C. § 102. The substantive standards used to determine whether an act of discrimination violated the Rehabilitation Act are the same standards applied under the Americans with Disabilities Act ("ADA"). *Coons v. Secretary of U.S. Dep't of Treasury*, 383 F.3d 879, 884 (9th Cir. 2004); 29 U.S.C. § 791(f). In turn, the ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, . . . hiring, . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

The district court correctly surmised that Parker pleads disparate treatment. ER-12. Disparate treatment occurs when "an employer has 'treated a particular person less favorably than others because of a protected trait.'" *Ricci v. DeStefano*,

557 U.S. 557, 577 (2009) (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 985-86 (1988)) (alteration adopted). Here, the protected trait is a perceived disability, which the ADA protects just as fervently as actual disabilities. *See* 42 U.S.C. § 12102(1)(C), (4). Parker's perceived disability is diabetes. ER-116.

In contrast to the district court's analysis, the law of pleading is clear: to analyze whether the Complaint states a claim for disparate treatment under the Rehabilitation Act, the *McDonnell Douglas* burden shifting framework[2] is not the correct standard—Rule 8 is. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) ("resolv[ing]" and rejecting the notion that "a complaint in an employment discrimination lawsuit must contain specific facts establishing a prima facie case of discrimination" under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *accord Austin v. Univ. of Or.*, 925 F.3d 1133, 1136 (9th Cir. 2019) (applying Rule 8(a)(2) to Title IX claim).

---

[2]  The evidentiary standard from *McDonnell Douglas* provides that, "at trial," the plaintiff has the burden of production to establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. The plaintiff is not obligated to marshal direct evidence of discriminatory intent, as there "will seldom be 'eyewitness' testimony as to the employer's mental processes." *Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 714 n.3 (1983). The burden of production then falls on the defendant to articulate a legitimate nondiscriminatory reason for the alleged discriminatory action. *McDonnell Douglas*, 411 U.S. at 802. The burden then shifts back to the plaintiff to adduce evidence that the allegedly legitimate reason is pretextual. *Id.* at 804.

17

Accordingly, in construing Federal Rule of Civil Procedure 8(a)(2), which merely requires the plaintiff to "provide a short and plain statement of the claim showing the pleader is entitled to relief," this Court has "settled on a two-step process for evaluating pleadings." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).

*First*, a court determines which allegations are "entitled to the presumption of truth." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). A mere recitation of elements is not entitled to this presumption, but all other factual allegations are assumed true. *Id.* The factual allegations must "give fair notice" to the defendant and "enable the opposing party to defend itself effectively." *Id.*

*Second*, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.* Discrimination claims are not subject to different pleading standards than other civil cases. *Swierkiewicz*, 534 U.S. at 513. Therefore, Parker's one and only requirement is that his Complaint, subject to the *Starr* analysis, provides a short and plain statement of his claim showing he is entitled to relief and giving air notice of his claims.

The Complaint here passes the *Starr* analysis. After accounting for all reasonable inferences, if read in the light most favorable to Parker, the Complaint alleges several facts that substantiate his disability discrimination claim.

18

1.      **Parker has a "record of" diabetes.**

*First*, Parker sufficiently alleges that during his job interview, he was "disabled" according to the ADA. Disability means (A) a physical or mental impairment that substantially limits one or more major life activities; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. §§ 12102(1)(A)-(C). By alleging sufficient facts, Parker satisfies two definitions of "disabled": the "record of" definition under subsection (B), and the "regarded as" definition under subsection (C).

Parker sufficiently pled a "record of" disability. A person has a "record of" disability if the individual has a history of . . . a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k)(1) (2024). "Whether an individual has a record of an impairment that substantially limited a major life activity shall be construed broadly to the maximum extent permitted by the ADA and should not demand extensive analysis." *Id.* § 1630.2(k)(2) (2024). "Diabetes is a recognized disability under the ADA" because it substantially limits the major life activity of eating. *Rohr v. Salt River Project Agric. Improvement & Power Dist.*, 555 F.3d 850, 858 (9th Cir. 2009); *see also* 42 U.S.C. §12102(2)(A) ("[M]ajor life activities include, but are not limited to . . . eating . . . ."). EEOC regulations concur. 29 C.F.R. § 1630.2(j)(3)(iii) (2024) ("easily conclud[ing]" that "diabetes substantially limits endocrine function"). The

19

"record of" definition has "no . . . temporal limitation." *Shields v. Credit One Bank, N.A.*, 32 F.4th 1218, 1224-25 (9th Cir. 2022).

According to the Complaint, Parker has a history of diabetes. Indeed, "[i]n 2018[,] [Parker] was diagnosed with diabetes." ER-116. Thus, he has a "record of" diabetes under the ADA. 42 U.S.C. § 12102(1)(B). Notably, the "record of" definition does not require the covered entity to know of the plaintiff's disability. *See Coons*, 383 F.3d at 886. A "record" alone suffices, provided it substantially limits a major life activity. *Id.*

In addition to this Court's and EEOC's explicit statements affirming that diabetes is substantially limiting as a matter of law, Parker's post-diagnosis lifestyle changes further support this conclusion. After his diagnosis, Parker made disciplined and severe lifestyle changes. *See* ER-116. He lost sixty pounds, controlled his blood sugar, and reacquired his Captain's license. *Id.* His diabetes diagnosis therefore substantially altered and limited several major life activities such as eating, sleeping, endocrine function, and other "major bodily functions" as defined by the ADA. 42 U.S.C. § 12102(2)(B). Parker therefore has a "record of" diabetes which, according to ADA, EEOC regulations, and this Court's precedent, substantially limited Parker's major life activities.

**2.** **Geye, Russell, and Stewart "regarded" Parker as disabled after they learned of his diabetes diagnosis.**

Geye, Russell, and Stewart all "regarded" Parker as disabled because, as the Complaint alleges, they knew he resigned "on account of his diabetes." ER-121. An individual is "regarded as" disabled "if the individual establishes that he . . . has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). An individual cannot be "regarded as" disabled if that disability is "transitory and minor." *Id.* § 12102(3)(B). A disability is transitory if it has an "actual or expected duration of 6 months or less." *Id.* Congress mandated that the ADA "shall be construed in favor of broad coverage of [disabled] individuals . . . to the maximum extent permitted by [its terms]." *Id.* § 12102(4)(A). Consistent with Rule 8(a)(2), Parker need only allege sufficient facts to make it *plausible* that the hiring team regarded him as disabled. At this stage, he is not required to allege that they *actually* regarded him as disabled (though he meets that burden too).

Geye and Russell plausibly perceived Parker as disabled. For example, Parker alleges that Russell, his "second level supervisor" during his previous tenure as a Small Craft Operator, and Geye, Parker's previous coworker and subsequent interviewer, both "recalled" Parker's "inability to pass the physical and

21

to renew his Captain's license." ER-119, 121. The Complaint then alleges that

Geye and Russell both knew that Parker's diagnosis "resulted in his resignation in

June 2019." ER-121. Indeed, the Complaint alleges that Geye remembers Parker

resigning "on account of his diabetes." ER-121. Because Russell and Geye

remembered Parker's resignation as being related to his disabling medical

condition, it is plausible that they regarded him as being "disabled" during the

hiring process and perceived him as having a medical condition, which then

affected their hiring decision.

Although not specifically alleged in the Complaint, construing all reasonable

inferences in Parker's favor, Stewart also knew that Parker resigned after his

diabetes diagnosis. Indeed, Stewart was Parker's "first level supervisor" during his

employment with USACE. ER-119. Therefore, it is reasonable to assume that

Parker resigned by informing Stewart of his failure to pass the physical exam,

especially given both Geye, a coworker, and Russell, Parker's second level

supervisor, also knew these details of Parker's resignation. ER-119; *see also* ER-

121. Therefore, Stewart plausibly "regarded" Parker as disabled.

> **3.   The panel's perceptions of Parker's disability led it to treat him differently than other non-disabled candidates in the hiring process.**

Parker's record of disability, and the panel's perception of that disability,

then plausibly factored into its decision not to rehire him, which he alleges and

corroborates with specific facts entitled to the presumption of truth. First and foremost, Parker alleges that he "would have been selected but for the perceived disability that Geye[] and Russell had of him . . . ." ER-121. Furthermore, Parker alleges the panelists recalled several isolated boating and other work-adjacent safety incidents that occurred during his tenure. For example, the Complaint alleges "[a]lmost all panelists emphasized the safety concerns related to Plaintiff['s] disability, alleging that [Parker's] crew did not feel safe riding [his] boat." ER-121. In turn, those incidents fueled the panel's perception of Parker's disability as limiting his work-related competencies, which then affected its hiring recommendation.

The Complaint also states that Parker's coworker Allen recalled a time when the two had to divert from their task because Parker had forgotten his diabetes medication. *See* ER-122–23. It is reasonable to infer that Russell and Stewart, Parker's supervisors during this time, were informed of this incident.

In addition, Parker alleges that one of the panelists, Alan Stewart, "recalled that during [Parker's] prior employment with Defendant, Plaintiff wrecked his car on his way to work." ER-121. To be sure, the Complaint does not explicitly allege that Stewart considered Parker's diabetes as contributing to that accident. But consistent with the liberal review given to *pro se* pleadings, the Court can reasonably infer that Parker meant to allege exactly that. Indeed, the immediately

23

preceding paragraph cites the same "safety concerns related to [Parker's] disability." ER-121. Therefore, Parker reasonably intended the following paragraph discussing the car wreck to insinuate that the wreck fueled Stewart's perception of Parker as disabled. *See id.* That perception, Parker alleges, then influenced Stewart's evaluation of Parker in his subsequent 2020 interview. *See id.*

Parker also alleges that Geye questioned Parker's ability to concentrate in his job interview, citing "episodic incidents where Plaintiff allegedly had to be re-directed twice . . . ." ER-121. In the light most favorable to Parker, this fact suggests that Geye plausibly attributed Parker's alleged lapses in concentration to Parker's previous diabetes diagnosis.

Parker does not allege these facts in a vacuum. He recounts the panel's cited safety incidents because, taking all reasonable inferences in his favor, the panel plausibly perceived Parker as having a disability—a perception created from when he resigned. The panel then imputed that disability as a contributing cause of these alleged safety-related and concentration-related events. Indeed, Geye cited safety concerns in his decision to rank Parker in last place for selection. ER-118. Consequently, the panel's perception of Parker's disability plausibly affected its hiring decision. In fact, the panel ranked all other non-disabled candidates higher than Parker and then offered employment to two of those candidates, who, Parker

alleges, were less qualified to perform the job's essential duties. *See* ER-118–21. Therefore, Parker states a claim for disability discrimination.

In sum, the Complaint alleges that the hiring team in charge of Parker's 2020 application, specifically Geye, Russell, and Stewart, had knowledge of the circumstances of Parker's 2019 departure—*i.e.*, his diabetes diagnosis that prevented him from recertifying his Captain's license. ER-121. They then raised concerns related to his safety record and his ability to concentrate in the interview. *Id.* Taking all reasonable inferences in Parker's favor, the Complaint plausibly alleges that Geye, Russell, and Stewart considered Parker's disability to be a contributing cause of the incidents leading to those safety and concentration concerns. *Id.*

Finally, Parker alleges that his hiring outcome would have differed—*i.e.*, that he would have ranked higher in any of the panelist's rankings—but for the panel's perceptions of his disability.[3] *Id.*; *see Murray v. Mayo Clinic*, 934 F.3d 1101, 1105 (9th Cir. 2019) (holding "but for" causation applies to title I of ADA).

---

[3] Indeed, to state a claim for discrimination under section 501, Parker is not required to allege that he would have been *hired* but for the hiring team's perceptions of his disability. His bar is much lower. He needs to allege sufficient facts that plausibly suggest he would have been ranked just a single spot higher on any of the accused panelists' recommendations but for their perceptions of his disability. *See Murray v. Mayo Clinic*, 934 F.3d 1101, 1105 (9th Cir. 2019). He does so. ER-121 ("Plaintiff would have been selected but for the perceived disability that Geye[] and Russell had of him and for his age.").

Like the Supreme Court held in *Swierkiewicz*, Parker's Complaint "detailed the events" leading to his adverse hiring decision, "provided relevant dates," and "included the [non-disabled status] of at least some of the relevant persons involved with his [non-selection]. 534 U.S. at 514; *Twombly*, 550 U.S. at 570. That, according to the Supreme Court, is all that is required under Rule 8(a)(2).

**B.      Contrary to This Court's Precedent, the District Court Incorrectly Applied Heightened Pleading Standards to the Complaint.**

The district court's analysis suffers from two errors. *First*, it applied the wrong pleading standard to Parker's Complaint. Contrary to this Court's precedent, the district court dismissed the Complaint after it concluded that Parker failed to plead the first element of his prima facie case. ER-16. But that is not the correct analysis. *See Swierkiewicz*, 534 U.S. at 508. *Second*, in its analysis under that flawed methodology, the district court incorrectly held that Parker failed to plead he was "disabled" under the ADA. ER-16. Compounding its error further, it again analyzed that definition of disability under the corresponding summary judgment standard while adjudicating a motion to dismiss. These flawed analyses led the district court to the wrong conclusion, requiring reversal.

1.      **The district court held Parker to an evidentiary burden— not a pleading standard.**

The district court's first flaw is that it failed to apply the correct pleading standard. Instead, it applied an evidentiary standard. This Court has repeatedly held that in employment discrimination cases, district courts must evaluate complaints according to Rule 8(a)(2). *E.g.*, *Austin v. Univ. of Or.*, 925 F.3d 1133, 1136 (9th Cir. 2019) (applying Rule 8(a)(2) standard to Title IX discrimination complaint). Rule 8(a)(2) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Therefore, to survive a motion to dismiss, Parker "need only provide 'enough facts to state a claim that is plausible on its face.'" *Austin*, 925 F.3d at 1137 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Crucially, there is no requirement for a plaintiff—especially one proceeding *pro se*—to adequately plead a prima facie case of discrimination under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to survive a motion to dismiss. *Swierkiewicz*, 564 U.S. at 508; *accord Austin*, 925 F.3d at 1136. Yet that is exactly what the district court required of Parker here. *See* ER-12–13.

The district court's analysis is notable for what it lacks: any discussion and application of the appropriate authorities. *Swierkiewicz* controls here. In a unanimous opinion, the *Swierkiewicz* Court (pronounced SWER-kuh-witz) held

that an employment discrimination complaint "need not include" such "specific facts establishing a prima facie case of discrimination" according to *McDonnell Douglas*. *Swierkiewicz*, 534 U.S. at 508.

In *Swierkiewicz*, the Second Circuit had affirmed the district court's dismissal of the plaintiff's employment discrimination claim for failing to plead a prima facie case of discrimination. *Id.* at 510. The Supreme Court unanimously reversed. It did so because "the prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." *Id.* Like the Second Circuit in *Swierkiewicz* and the district court here, a court applying such a "heightened pleading standard in employment discrimination cases" errs in its analysis because that standard contravenes the lenient language of Rule 8(a)(2). *Id.* at 512.

Time and again, this Court has interpreted *Swierkiewicz* to mean what it says. *E.g.*, *Mattioda v. Nelson*, 98 F.4th 1164, 1174-75 (9th Cir. 2024).[4] The result is the previously employed *Starr* two-step analysis, which the district court

_____

[4] That conclusion stands whether the question arose before or after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *Compare Maduka v. Sunrise Hosp.*, 375 F.3d 909, 912 (2004) (reversing district court's 12(b)(6) dismissal for failing to "follow the teaching of *Swierkiewicz* that the 'Federal Rules do not contain a heightened pleading standard for employment discrimination suits'" (quoting *Swierkiewicz*, 534 U.S. at 515)) *with Austin v. Univ. of Or.*, 925 F.3d 1133, 1136 (9th Cir. 2019) (applying *Swierkiewicz* standard and not prima facie case to Title IX context post-*Iqbal* and *Twombly*). Indeed, *Twombly* explicitly rejected the notion that its holding overruled *Swierkiewicz*. *Twombly*, 550 U.S. at 569-70.

omitted. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011); *accord Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) ("settl[ing]" on "two-step process for evaluating pleadings"). First, a court determines which allegations are "entitled to the presumption of truth." *Starr*, 652 F.3d at 1216. Second, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief . . . ." *Id.*

Here, the district court incorrectly substituted the *Swierkiewicz* rule for an evidentiary standard and failed to engage in the *Starr* two-step analysis. Specifically, it required Parker to "establish a prima facie case of disparate treatment for non-selection." ER-12 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Citing *McDonnell Douglas* again, the court stated that Parker "bears the initial burden of pleading discrimination." ER-12 (citation omitted). Although that statement is literally true, that analysis conflates a motion for summary judgment with a motion to dismiss. At the pleading stage, Parker's only obligation is to allege sufficient facts to show that his disability plausibly played at least some part in the panel's hiring decision.[5]

---

[5]     Claims under section 504 of the Rehabilitation Act require that the plaintiff was discriminated "solely by reason of" his disability. 29 U.S.C. § 794(a). In contrast, consistent with title I of the ADA, section 501 employs a lower causation standard. Under section 501, Parker must allege that the panel would have ranked him differently "but for" his disability. *Murray v. Mayo Clinic*, 934 F.3d 1101, 1105 (9th Cir. 2019). The ADEA employs the same standard. *Gross v. FBL Financial Servs., Inc.*, 557 U.S. 167, 177-78 (2009).

The district court interpreted Parker's "burden" to require him to allege that "(1) he belongs to a protected class; (2) he applied for and was qualified for the position he was denied; (3) he was rejected despite his qualifications; and (4) the employer filled the position with an employee not of plaintiff's class . . . ." *Id.* (citing *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1037 (9th Cir. 2005)[6] (alterations adopted)). The district court therefore confused the *McDonnell Douglas* evidentiary burden with a pleading requirement—exactly the type of analysis the Supreme Court rejected in *Swierkiewicz.* To be sure, alleging facts which correspond to Parker's prima facie case elements would be sufficient, but is not necessary, to survive a motion to dismiss. *See Swierkiewicz*, 534 U.S. at 511. As analyzed earlier, Parker sustained his obligation under Rule 8(a)(2).

##### 2. The district court's analysis of the prima facie case suffers from the same error.

The district court next compounded its error by continuing to analyze whether Parker has a "disability," the first element of his prima facie case, under its complementary—and equally misplaced—summary judgment standards. The district court concluded in the first prong that Parker failed to "establish," not plead, that he was "regarded as disabled." ER-13. Specifically, it held that Parker

---

[6]     Notably, *Dominguez-Curry* employed this articulation of the prima facie case in reversing the grant of *summary judgment* for the defendant. 424 F.3d at 1031. It did not discuss the pleading standard in employment discrimination cases.

failed to plausibly allege that his interviewers' perception of his disability "was related to—much less the reason for—any alleged discrimination in the decision to not hire" him.[7] ER-15. Again, the court misapplied summary judgment standard.

As discussed, an individual qualifies as "disabled" under the ADA if he "is regarded as" disabled. *Coons*, 383 F.3d 879, 884 (9th Cir. 2004); *see also* 42 U.S.C. § 12102(1); 29 C.F.R § 1630.2(g) (2023). Parker pleads that he no longer has a physical or mental impairment—type II diabetes—and that it currently does not limit any major life activity. ER-116. The district court therefore only analyzed the Complaint under subsection (C), whether he was "regarded as" disabled by Geye, Russell, or Stewart. Parker meets the requirement of "being regarded as" disabled if he "establishes that he . . . has been subjected to a [discriminatory] action . . . because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). As previously analyzed, Parker easily meets this definition because he alleges the panel's hiring decision plausibly resulted from its

---

[7]     The case cited for the proposition Parker must allege the discriminatory decision occurred because of his disability was on a motion for *preliminary injunction*. *See Doe v. Samuel Merritt Univ.*, 921 F. Supp. 2d 958, 961 (N.D. Cal. 2013). It also came in the court's analysis of whether the plaintiff adduced enough *evidence* to establish a likelihood of success on the merits. *Id.* at 964. That same court later denied the defendant's motion to dismiss. Order Den. Def.'s Mot. to Dismiss at 1, Doe v. Samuel Merritt Univ., No. C-13-00007 JSC, (N.D. Cal. Feb. 8, 2013), ECF No. 23.

perception that Parker's diabetes diagnosis contributed to multiple alleged safety incidents and lapses in concentration. *See supra*, section I.A.2.

The flaws in the district court's analysis are apparent from the sources it cites (and ignores). For the substantive legal standard on the "regarded as" question, the district court cited to *Socal Recovery, LLC v. City of Costa Mesa*, 56 F.4th 802, 817 (9th Cir. 2023). But that case was on appeal to this Court after the district court ruled on a motion for summary judgment. *Id.* at 811 ("Appellants timely appealed the grants of summary judgment."). The district court therefore did not analyze whether Parker *pled* that he was regarded as disabled. Rather, it incorrectly subjected Parker's Complaint to yet another heightened evidentiary burden. It then analyzed the first prong of Parker's prima facie case under the corresponding summary judgment standard. The district court failed to cite *Swierkiewicz* or any of this Court's precedents interpreting pleadings in employment discrimination cases. *See* ER-13 (citing *Nunies v. HIE Holdings, Inc.*, 908 F.3d 428 (9th Cir. 2018) (reversing district court's entry of summary judgment which concluded plaintiff was *not* "regarded as" disabled)).

The district court next found another putative shortcoming in the Complaint. It agreed with Wormuth that Parker failed to adequately allege that Geye's and Russell's perception of Parker's disability was "the reason for" or at least "related to" their hiring decision. ER-15. But the district court's analysis fails to read the

Complaint in the light most favorable to Parker. His Complaint, drafted *pro se*, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice.")) (citation omitted). Although the Complaint may not perfectly connect Parker's disability with the hiring team's alleged discriminatory comments and refusal to rehire, so liberally construed, Parker alleges what is required: that the panel's perceptions of his disability led it to treat him differently than other non-disabled candidates in the hiring process. *See supra*, Section I.A.3.

### 3. The district court failed to consider Parker's record of disability.

In applying the first prong of the *McDonnell Douglas* standard, the district court required Parker to establish a disability under the ADA. ER-13. A "record of" disability qualifies. 42 U.S.C. §§ 12102(1)(B). In error, the district court focused solely on the "regarded as" prong and failed to consider whether Parker alleged a "record of" disability under subsection B. As analyzed previously, Parker meets this definition because he was previously diagnosed with diabetes, ER-116, and diabetes substantially limits the major life activities of eating and endocrine function. 42 U.S.C. § 12102(2)(A); *Rohr*, 555 F.3d at 858; 29 C.F.R. §

33

1630.2(j)(3)(iii) (2024). So even if Parker is not "regarded as" disabled, the court should have analyzed Parker's prima facie case given his record of diabetes.

### 4. The district court erred in its *Starr* two-step analysis.

The district court first mislabeled facts as legal conclusions. Parker alleged that Geye and Stewart "emphasized the safety concerns related to Plaintiff['s] disability, alleging that his crew did not feel safe riding Plaintiff's boat." ER-121. The district court said this statement was "conclusory" and not an "actual fact[]." ER-14. But this statement may reasonably be interpreted as Parker alleging that Geye and Russell stated or insinuated that Parker's diabetes diagnosis played a role in their decision not to hire him. Geye's own notes state, and Parker alleges, that his "[in]ability to follow [the] full spectrum of comprehensive small craft safety" was the primary reason the panel ranked him last in their hiring decision. ER-118. To be fair, that may be a legitimate non-discriminatory reason for the panel's decision—to be relevant later at summary judgment. But that does not obviate the fact that Parker's allegation was a fact entitled to the presumption of truth.

The district court also failed to make simple inferences in Parker's favor by reading each paragraph of the Complaint in isolation. For example, it concluded Parker failed to state a claim because he did not plausibly allege the "perception of" his disability "was related to—much less the reason for—any alleged discrimination" in the panel's hiring decision. ER-15. But "[s]uch parsing of

34

[Parker's] complaint is inconsistent with the district court's obligation to construe well-pleaded allegations in [Parker's] favor." *Mattioda*, 98 F.4th at 1175 (citation omitted). If read in the light most favorable to Parker, the Complaint alleges that the alleged safety incidents, combined with the panelists' knowledge of the circumstances of Parker's 2019 departure—a medical diagnosis preventing him from recertifying his Captain's license—led to the adverse hiring decision, and further that Parker was rejected in favor of far less qualified candidates. ER-117-21. That is all that is required under Rule 8(a)(2). This Court should not repeat the error of reading each paragraph of the Complaint out of context.

If this case was at a later stage, such as summary judgment, the *McDonnell Douglas* burden shifting framework would apply. *E.g.*, *Nunies v. HIE Holdings, Inc.*, 908 F.3d 428, 433 (9th Cir. 2018). In other words, at summary judgment Parker would need to adduce evidence that (1) he is disabled within the meaning of the ADA; (2) he is qualified to perform the essential function of the job to which he applied with or without reasonable accommodation; and (3) the Army treated him differently in its hiring decision because of his disability. *See id.*

That standard, however, is entirely misplaced at the pleading stage. In sum, the district court incorrectly accelerated this litigation by transferring and applying evidentiary standards to the pleading stage. While doing so, it incorrectly analyzed whether Parker is "disabled" under the ADA. Parker alleges that "he would have

been selected but for the perceived disability" that Geye and Russell had of him

from his 2019 resignation. ER-121. After reapplying to a job in which he received

a "Fully Successful" review, the panel ranked Parker in last place behind three

other less qualified candidates with no disability or perceived disability. ER-117-

19. These factual allegations give Wormuth notice of the basis of Parker's claim

and plausibly state a claim for disability discrimination.

This Court should therefore reverse the district court's dismissal and

reinstate Parker's disability discrimination claim under the Rehabilitation Act.

**C.**     **Even though *McDonnell Douglas* does not apply at the pleading stage, Parker states a claim under that standard too.**

Although the plausibility standard from *Swierkiewicz* and *Twombly* governs

the pleading stage, Parker's Complaint, as alleged, states a claim under the

*McDonnell Douglas* framework as well. First, Parker had a record of disability. A

person has a "record of disability if the individual has a history of . . . a mental or

physical impairment that substantially limits one or more major life activities." 29

C.F.R. § 1630.2(k)(1) (2024). Parker's diabetes diagnosis substantially altered and

limited several of his major life activities, including eating, sleeping, and endocrine

function. *See* ER-116. Consequently, Parker had a record of disability. Geye,

Russell, and Stewart also all "regarded" Parker as disabled because, as the

Complaint alleges, they knew he resigned "on account of his diabetes." ER-121.

Parker's record of diabetes, and Geye's knowledge that Parker resigned for a medical reason and was a disabled Veteran is not in dispute. What is in dispute is if Parker's disability influenced his ranking relative to the other three candidates. Would Parker have been ranked higher than even one of the other three candidates "but for" his status as a member of a protected class? This is a genuine issue of material fact. A reasonable jury could find that Parker's low ranking among the candidates was due to his record of diabetes or because he was "regarded" as disabled by Geye, Russell, and Stewart. Thus, dismissal of Parker's disability discrimination claim was even inappropriate under *McDonnell Douglas*. This Court should reverse the district court's dismissal and remand, accordingly.

## II. Parker Stated a Claim under the ADEA.

Parker also stated a claim of age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA") according to the disparate treatment theory. The district court erred when it held otherwise. The court's analysis of Parker's ADEA claim suffers from the same legal deficiency as its analysis on Parker's Rehabilitation Act claim. The district court erroneously applied summary judgment standards to a motion to dismiss.

Parker's Complaint contains a sufficient short and plain statement of his ADEA claim showing that he is entitled to relief. Consequently, under the correct

pleading standard, Parker did what the law requires. This Court should therefore reverse and allow Parker to move forward with his claim.

### A. Parker's Complaint sets forth a short and plain statement of his age discrimination claim that plausibly suggests his right to relief.

Parker's Complaint asserts a plausible claim for age discrimination against Wormuth for disparate treatment under the Age Discrimination in Employment Act of 1967. 29 U.S.C. §§ 621, *et seq*. Section 633(c) affords Parker this private right of action. *See Lehman v. Nakshian*, 453 U.S. 156, 158 (1981).

Under the ADEA, it is explicitly "unlawful for an employer . . . to refuse to hire. . . any individual [who is at least 40 years of age]. . . because of such individual's age." 29 U.S.C. §§ 623(a)(1), 631(a). Congress found when enacting the ADEA that "in the face of rising productivity and affluence," older workers like Parker were especially disadvantaged "in their efforts to...regain employment when displaced from jobs." *See id.* § 621(a)(1). It was, in part, in response to this finding that Congress passed the ADEA to (1) promote employment of older persons based on ability rather than age, (2) prohibit arbitrary age discrimination in employment, and (3) facilitate employers and workers in finding ways of addressing challenges posed by the impact of age on employment. *See id.* § 621(b).

In an ADEA disparate treatment case, a plaintiff can establish age discrimination using either direct or circumstantial evidence. *Sheppard v. David*

38

*Evans & Assocs.*, 694 F.3d 1045, 1049 (9th Cir. 2012) (citing *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). A plaintiff may establish a prima facie case of intentional discrimination on the basis of age by alleging that: (1) he was at least 40 years old, (2) he was qualified for the position for which the application was submitted, (3) he was denied the position; and (4) the position was given to a substantially younger person with equal or inferior qualifications *or* he was denied the position under circumstances otherwise giving rise to an inference of age discrimination. *See France v. Johnson*, 795 F.3d 1170, 1174 (9th Cir. 2015); *Sheppard*, 694 F.3d at 1045, 1049.

However, a plaintiff is not required to establish a prima facie case of discrimination at the pleading stage. *Swierkiewicz*, 534 U.S. at 506, 508. The prima facie case is an evidentiary standard, not a pleading standard. *Id.* The pleading stage is governed by a lower threshold. *Id.* at 506, 510-511. Federal Rule of Civil Procedure 8(a)(2) merely requires the plaintiff to "provide a short and plain statement of the claim showing the pleader is entitled to relief." *See id.* The short and plain statement "need only provide 'enough facts to state a claim that is plausible on its face.'" *Austin*, 925 F.3d at 1137 (quoting *Twombly*, 550 U.S. at 570). Accordingly, at the pleading stage, Parker only needed to expound in his original Complaint a short and plain statement alleging a plausible and

39

nonconclusory prima facie case. *See* Fed. R. Civ. P. 8(a)(2); *see also Ricci*, 557 U.S. at 557, 577; *Watson*, 487 U.S. at 977, 985-86.

In *Sheppard v. David Evans and Assoc.*, plaintiff, Kathryn Sheppard ("Sheppard") appealed the dismissal of her age discrimination claim under the ADEA for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). 694 F.3d at 1045. Sheppard's complaint alleged that her "age was a determining factor in [her employer's] decision to terminate [her]." Complaint at 2, *Sheppard v. David Evans & Assocs.*, No. 3:10-cv-00276-BR (D. Or. 2010, Mar. 15, 2020). Sheppard noted that she was "an adult female citizen in the federally protected age group under the ADEA, 29 [U.S.C.] 621 *et seq*." Sheppard asserted that "at all material times[,] her performance was satisfactory or better." *Id*. Sheppard further alleged that that "there were five comparators employed by Evans in Oregon of which [she] was the oldest," and she was "involuntarily terminated from her position" while the "younger comparators kept their jobs." *Id*.

This Court reversed and remanded, holding that Sheppard's allegations were sufficient to state an ADEA claim. 694 F.3d at 1045. This Court reasoned that Sheppard's complaint pled a plausible prima facie case of age discrimination because it alleged that (1) she was at least 40 years old; (2) her performance was satisfactory or better; (3) she was discharged; and (4) the four younger comparators kept their jobs, which gave rise to an inference of age discrimination. *Id.* at 1050.

40

This Court noted that Sheppard's allegation that the younger comparators kept their jobs "[gave] rise to an 'inference of age discrimination' because it plausibly suggests that [Sheppard's employer] 'had a continuing need for [Sheppard's] skills and services [because her] various duties were still being performed.'" *Id.*

Similarly, Parker's Complaint alleges a plausible prima facie case of age discrimination. As Sheppard did, Parker alleged in his Complaint that he "would have been selected but for . . . his age." ER-121. Like Sheppard, Parker noted that he was an adult citizen in the federally protected age group under the ADEA, 29 U.S.C. 621 *et seq. See* ER-116. Parker, now 61, was 57 at the time USACE refused to rehire him. ER-117. Furthermore, like Sheppard, Parker asserted that at all material times, his performance was satisfactory or better. *See* ER-117, 122. Parker noted that during his prior tenure with USACE as a Small Craft Operator, he received a "Fully Successful" rating in 2019 on his performance evaluation. ER-117. Parker also noted that Jesse Allen, a close coworker during his prior tenure, observed that Parker "accomplished the mission, was a really hard worker, [and] put in overtime when that was called for." ER-122. Like Sheppard's involuntary termination, Parker experienced an adverse employment action through USACE's refusal to rehire him. Moreover, just as Sheppard further alleged that she was the oldest of five comparators and the only one terminated, Parker further alleged in his Complaint that he was the oldest of four interviewed and each of the younger

41

candidates was ranked ahead of him in Geye's recommendation email to Russell. ER-117–19. Parker even went a step further than Sheppard, noting in his Complaint that each of the three candidates was not only younger, but at least seven years his junior, and each was far less qualified. ER-117-121.

Thus, adhering to this Court reasoning in *Sheppard*, Parker's Complaint alleges a plausible prima facie case of age discrimination because: (1) he was at least 40 years old; (2) his performance was satisfactory or better; (3) he was denied the opening; and (4) he was ranked below three candidates, each at least seven years younger than him, by Geye despite his qualifications. Parker's allegation that he was ranked below three candidates, each of them at least seven years younger, despite his qualifications, gives rise to an inference of age discrimination because it plausibly suggests that his age was the reason for his non-selection.

Unlike Sheppard's complaint, Parker's Complaint also includes additional facts that suggest a circumstance otherwise supporting an inference of age discrimination. Specifically, during the job interview, Geye "suspected and questioned" Parker's "ability to concentrate" after Parker "had to be re-directed twice" while answering questions posed by the panel. ER-121. Furthermore, Geye, in his recommendation email to Russell, included at least one positive comment about each of the other three candidates interviewed but omitted any for Parker. ER-117–19. How could Geye not only rank Parker last, but also question his

42

mental acuity and have nothing positive to say about him—when this was the very same Parker who earned a "Fully Successful" 2019 evaluation in the exact same role? Such inconsistencies also support an inference of age discrimination.

Brevity in pleading does not inherently render a claim implausible following the Supreme Court's decision in *Twombly*. *See Swanson v. Citibank., N.A.,* 614 F.3d 400, 404–05 (7th Cir. 2010); *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008); *Grajales v. Puerto Rico Ports Authority*, 682 F.3d 40, 44 (1st Cir. 2012). In *Swanson*, the Seventh Circuit observed:

> [I]n many straightforward cases, it will not be any more difficult today for a plaintiff to meet [her] burden than it was before the [Supreme] Court's recent decisio[n] [in *Twombly*]. A plaintiff who believes that she has been passed over for a promotion because of her sex will be able to plead that she was employed by Company X, that a promotion was offered, that she applied and was qualified for it, and that the job went to someone else. That is an entirely plausible scenario, whether or not it describes what 'really' went on in [the] plaintiff's case.

*Swanson*, 614 F.3d at 404–05. Like the Seventh Circuit's hypothetical example, Parker's Complaint puts forth a "straightforward" claim of discrimination. He was over 40, had a satisfactory performance record supported by his 2019 performance evaluation and a close coworker's account, yet USACE refused to rehire him over three candidates at least seven years younger. Accordingly, Parker's allegations present an "entirely plausible scenario" of age discrimination. *See Id.* at 404-05.

**B. Contrary to this Court's Precedent, the District Court Incorrectly Applied a Heightened Pleading Standard to Parker's ADEA Claim.**

As above, the district court committed two key errors regarding Parker's ADEA claim. *First*, it applied an evidentiary standard rather than the appropriate pleading standard. Contrary to this Court's precedent, the district court dismissed the Complaint after it concluded that Parker failed to plead the final element of his prima facie case. ER-11. But Parker is not required nor expected to have the necessary circumstantial or direct evidence to establish a prima facie at the pleading stage. *See Swierkiewicz* 534 U.S. at 506, 508. *Second*, compounding its first error, the district court defined and applied a rigid formulation of the prima facie standard before Parker's opportunity for discovery. In doing so, it overlooked the possibility that Parker was denied the position with USACE under circumstances otherwise giving rise to an inference of age discrimination. ER-11. These incorrect analyses led the district court to apply a substantially heightened pleading standard. The substantially heightened pleading standard then led the district court to wrong conclusion, and therefore requires reversal.

**1. As the district court did with Parker's Rehabilitation Act claim, it held Parker's ADEA claim to an evidentiary burden rather than the appropriate pleading standard.**

The district court's analysis of Parker's age discrimination claim suffers from the same fundamental errors as its analysis of Parker's disability

44

discrimination claim—it incorrectly applied a heightened evidentiary standard instead of the pleading standard required by Rule 8(a)(2).

As noted, this Court has repeatedly held that in employment discrimination cases, district courts must evaluate complaints according to Rule 8(a)(2). *E.g.*, *Austin*, 925 F.3d at 1133, 1136 (applying Rule 8(a)(2) standard to Title IX discrimination complaint). Moreover, there is no obligation for a plaintiff— especially a *pro se* plaintiff—to plead a prima facie case of discrimination under *McDonnell Douglas* to survive a motion to dismiss. 411 U.S. 792 (1973).

Yet, the district court required Parker to do just that. *See* ER-11–12. Although the court did not explicitly mention or cite *McDonnell Douglas* in its analysis of Parker's ADEA claim, it cited *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). *Id.* In *Diaz*, this Court held that "ADEA claims based on circumstantial evidence are evaluated under *McDonnell Douglas*." *Diaz*, 521 F.3d at 1207. The court thus evaluated the adequacy of Parker's ADEA claim at the pleading stage under *McDonnell Douglas.* This constitutes a reversible error.

*Swierkiewicz* is binding authority on the district court. There, in a unanimous reversal of a district court's dismissal of an employment discrimination claim for failing to plead a prima facie case, the Supreme Court held that the "prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." *Swierkiewicz,* 534 U.S. at 510.

45

As the district court did with Parker's disability discrimination claim, it incorrectly substituted the *Swierkiewicz* rule for an evidentiary standard. Specifically, it required Parker to establish a prima facie case of disparate treatment for age discrimination. ER-11.

The district court's analysis conflates a motion for summary judgment with a motion to dismiss. This distinction is critical because, at the pleading stage, a motion to dismiss tests only the plausibility of the allegations, not the strength of the evidence. Requiring Parker to prematurely meet an evidentiary burden is against the spirit of Rule 8(a)(2), which allows plaintiffs to proceed based on plausible claims. By contrast, at the summary judgment stage, Parker would be required to present evidence demonstrating a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding that "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."). Courts should only apply *McDonnell Douglas* during summary judgment or trial—after discovery is complete and the evidence has been gathered. However, at the pleading stage, Parker's sole obligation is to assert sufficient facts to show that his age plausibly played a role in the panel's hiring decision. Parker successfully did that.

46

> **2.** **The district court's imposition of an evidentiary burden at the pleading stage led to the application of a rigid prima facie standard.**

By incorrectly applying an evidentiary standard at the pleading stage, the district court imposed an inflexible prima facie standard. The exact requirements of a prima facie case "can vary with the context and were 'never intended to be rigid, mechanized, or ritualistic.'" *Swierkiewicz*, 534 U.S. at 506-07 (citing *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978)); *see also McDonnell Douglas Corp.*, 411 U.S. at 792, 802 n.13 ("[T]he specification . . . of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations"); *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 (1977) (noting that this Court "did not purport to create an inflexible formulation" for a prima facie case); *Ring v. First Interstate Mortg., Inc.*, 984 F.2d 924, 927 (8th Cir. 1993) ("[T]o measure a plaintiff's complaint against a particular formulation of the prima facie case at the pleading stage is inappropriate").

As above, the district court imposed on Parker the prima facie case articulated in *Cotton v. City of Alameda*, 812 F.2d 1245, 1248 (9th Cir. 1987). ER-11. Under *Cotton* the prima facie case for disparate treatment requires a plaintiff to establish: (1) that he was within the protected class of individuals; (2) that he applied for a position for which he was qualified; and (3) that a substantially younger person with similar qualifications was hired for the position instead.

47

*Cotton*, 812 F.2d at 1248. However, the issue with this formulation is that *Cotton* applies it to a motion for summary judgment. Moreover, *Cotton* cites *Sakellar v. Lockheed Missiles & Space Co.*, 765 F.2d 1453, 1455 (9th Cir.1985), as its source for this formulation, but *Sakellar* was an appeal of a final verdict. *Id.* at 1454. Both cases therefore apply this prima facie standard at a much later stage in the litigation process, not at the pleading stage.

All this to say that not only did Parker have to overcome an incorrect and heightened pleading standard, but he also had to meet a higher evidentiary burden than warranted based on the facts of this case. In *Sheppard*, the final element of the prima facie formulation considered whether the position was given to a substantially younger person with equal or inferior qualifications, *or* the person was denied the position under circumstances otherwise giving rise to an inference of age discrimination. 694 F.3d at 1049. Parker alleged enough under *Sheppard*. Even more, the court applied an *evidentiary presumption* against Parker because he alleged a 7-year age difference, and then faulted him for failing to proffer more evidence discrimination. ER-10-11 (citing *France v. Johnson*, 795 F.3d 1170, 1174 (9th Cir. 2015)). Under *Sheppard*, Parker alleged sufficient facts and circumstances giving rise to an inference of age discrimination; evidentiary presumptions do not apply at the 12(b)(6). Indeed, absent discovery, Parker could not possibly know the *exact* age of the other candidates. Accordingly, this Court should reverse.

**III.   The District Court Incorrectly Considered Evidence Outside the Complaint.**

The Government requested judicial notice of several administrative records, and sought to rely on them for the matters stated therein to defeat Parker's claims. ER-107. The district court incorrectly took judicial notice of documents outside the Complaint, constituting reversible error. ER-7 n.1. Generally, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (quoting *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994)). If a court considers outside material, (with two exceptions, neither of which applies here) the motion to dismiss converts to a motion for summary judgment. Fed. R. Civ. P. 12(d); *see also id.* The court must then provide all parties an opportunity to present evidence relevant to summary judgment. *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986) *abrogated on other grounds by Astoria Fed. S&L Ass'n v. Soimino*, 501 U.S. 104 (1991). That of course did not occur here (which would be imperative for a *pro se* plaintiff, and the district court correctly denied the Government's alternative request to convert to summary judgment. ER-7 n.1.

The first exception is incorporation by reference, which requires a complaint to "necessarily rely" on an external document. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). It

applies when (1) the complaint refers to the external document; (2) no party questions the authenticity of that document, and (3) the document is central to the plaintiff's claim. *Marder*, 450 F.3d at 448.

A document is central to a claim if the *contents* of the document itself are essential to form the basis for a cause of action. *See Ritchie*, 342 F.3d at 908. Two examples would be "when a plaintiff's claim about insurance coverage is based on the *contents* of a coverage plan, or when a plaintiff's claim about stock fraud is based on the *contents* of SEC filings." *Id.* (citations omitted) (emphases added).

Here, Parker's Complaint does not necessarily rely on any outside documents. The district court therefore erred when it considered information introduced by Wormuth in external EEOC documents. *See* ER-7 n.1 (concluding that "EEOC records provided by Defendant in support of her motion to dismiss satisfy th[is] standard[]"). For starters, the district court misstated (and presumably misapplied) the law. Critically, in describing the incorporation by reference doctrine elements, it substituted its "or" for this Court's "and." *Compare* ER-7 n.1 ("or") *with No. 84 Emp. Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 925 n.2 (9th Cir. 2003) ("and").

Neither of Parker's claims necessarily relies on EEOC documents.[8] His Rehabilitation Act and ADEA claims do not depend on any content within the EEOC filings. The converse would be quite perplexing; to satisfy the rule, Parker's claims would be based on discriminatory action taken *by* the Administrative Judge in the failure to hire Parker. Of course, Parker claims discrimination arising from the failure to rehire, and not per se from the administrative decision itself.[9] All necessary facts are alleged and contained within the four corners of his Complaint.

The second exception, which also does not apply here, is judicial notice. A court may take judicial notice of matters of public record, such as agency hearings, without converting a motion to dismiss into a motion for summary judgment. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (citing *Lee*, 250 F.3d at 689). "But a court cannot take judicial notice of disputed facts contained in such public records." *Id.* If the plaintiff disputes facts from external

---

[8]    The district court incorporated all the documents Wormuth submitted and offered to defeat Parker's claims, even those unmentioned in Parker's Complaint. *See* ER-7 n.1 (taking notice of "various administrative records" submitted by Wormuth); *see also* ER-50–95.

[9]    That is not to say Parker could not make such allegations. Indeed, that the agency *sua sponte* granted summary based on its own internal investigation without affording Parker any chance to do discovery certainly implicates due process and further illustrates the injustice of foreclosing his federal complaint. *See Ramirez-Alejandre v. Ashcroft*, 319 F.3d 365, 377 (9th Cir. 2003) (en banc).

51

document, the court may only take judicial notice of the "existence" of the document, not the "truth of the facts recited therein . . . ." *Lee*, 250 F.3d at 689-90.

The district court was incorrect to judicially notice the EEOC records here. *See* ER-7 n.1. Although the documents come from a federal agency, Parker disputes any factual findings of the EEOC for purposes of his appeal and stands on the sufficiency of his Complaint alone. *See e.g.*, ER-19 (disputing veracity of comparator's ages). Therefore, the district court could only judicially notice the existence of the EEOC documents, not the truth of their content. To be sure, this Court may acknowledge, for example, the *existence* of the Administrative Judge's Decision and Order Entering Judgment from May 12, 2022, for the purpose of establishing Parker's exhaustion of administrative remedies or timeliness. ER-87. But the Court should not consider any findings or assertions therein as "facts."

Even if the matters are judicially noticeable, under Rule 12(b)(6) standards, only the matters that would *support* Parker's allegations may be considered to establish the plausibility of his allegations. Here, however, Wormuth sought to use such matters to defeat Parker's allegations (ER-107, ER93-94), which is impermissible under 12(b)(6). *See Shields v. Credit One Bank, N.A.*, 32 F.4th 1218, 1220 (9th Cir. 2022) (citations omitted); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that pleadings submitted *pro se* are liberally construed and held to less stringent standards than formal pleadings by lawyers).

52

**IV.    If This Court Affirms the District Court's Opinion and Order on Either Claim, It Should Grant Parker Leave to Amend**

If this Court affirms, Parker respectfully requests leave to amend.

In *Foman v. Davis,* the Supreme Court held that "in the absence of any apparent or declared reason—[leave to amend] should, as the rules require, be 'freely given.'" 371 U.S. 178, 182 (1962). Consistent with *Foman*, this Court has held that "[courts] should determine whether to allow leave to amend by ascertaining the presence of four factors: bad faith, undue delay, prejudice to the opposing party, and futility." *In re Tracht Gut, LLC*, 836 F.3d 1146, 1152 (9th Cir. 2016) (citing *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999)).

Here, none of the four factors—bad faith, undue delay, prejudice to the opposing party, or futility—are present. Accordingly, if the district court's judgment on either of Parker's disability or age discrimination claims is affirmed, Parker should be granted leave to amend the respective claim.

It is reversible error for a court to grant a motion to dismiss that has been converted to one for summary judgment, without providing all parties a reasonable opportunity to present material relevant to a Rule 56 motion. *Mack,* 798 F.2d at 1282. This notice requirement applies with special force to *pro se* litigants. *See Lucas v. Dep't of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995).

To the extent that, by taking judicial notice of EEOC documents, the district court effectively converted Wormuth's motion to dismiss into a motion for

summary judgment, thereby triggering the requirement to provide Parker notice, leave to amend must be granted. Wormuth proffered Parker's administrative affidavit and the summary judgment decision to support the motion to dismiss (ER-86, ER-71) and Parker, obviously assumed that he should do the same thing, and proffered additional administrative affidavits (ER-17-49). But Parker could not have known that any of this material would or would not be considered because the district court did not satisfy the notice requirement, thereby depriving Parker of the opportunity to present additional factual allegations to support his Complaint. As a *pro se* litigant, it is reasonable to assume that Parker was confused by the court's lack of notice, which precluded him from fully understanding his ability to amend and responding to what was, effectively, a motion for summary judgment.

At bare minimum, Parker should be granted leave to amend to add additional allegations that would cure any defect in the Complaint this Court should find.

## V.     Parker's Complaint is Timely.

The district court properly found that Parker's Complaint was timely (ER-8 n.2) and rejected Wormuth's motion to dismiss arguing otherwise (ER-101-02). After EEOC's final determination, a plaintiff has 90 days to file in district court.[10] 42 U.S.C. § 2000e-16(c); *Missirlian v. Huntington Mem'l Hosp.*, 662 F.2d 546,

---

[10]     Per 29 U.S.C. § 626(d), a plaintiff bringing an ADEA claim under 29 U.S.C. § 633a(c) is not subject to a 90-day filing requirement following the receipt of a right-to-sue notice. *See Forester v. Chertoff*, 500 F.3d 920, 924 (9th Cir. 2007).

548 (9th Cir. 1981); *see also* 29 U.S.C. § 794a(a)(1) (applying "procedures" of Title VII to Rehabilitation Act). But that 90-day clock "does not commence until the plaintiff receives notice of his or her right to sue and the date from which the time limit on this right starts to run." *Missirlian*, 662 F.2d at 549.

For example, in *Missirlian*, this Court reversed the district court's finding of no jurisdiction when EEOC failed to notify the plaintiff of the exact date the 90-day clock started to run. *Id.* at 550. Consistent with Title VII's "broad remedial purpose," this Court held that a notice requiring the plaintiff to "guess when the ninety-day period commences" is no notice at all. *Id.* Therefore, even though EEOC mailed the plaintiff a final determination on the merits, her 90-day clock did not begin because it failed to give a "clear indication" of that exact date. *Id.* at 549.

Here, Parker did not receive notice of the exact date his 90-day clock began. ER-122 ¶90. The AJ issued his Decision and Order Entering Judgment against Parker on May 12, 2022. ER-122¶87. That same document later informs him that the agency must issue a "final order notifying Complainant" within 40 calendar days. ER-89. And the record is bereft of any explicit notification to Parker of a specific date when his 90-day clock began to run. ER-8 n.2. That is likely because EEOC failed to issue Parker a final order. ER-122¶90. Parker, who filed his Complaint *pro se*, ER-115¶3, was never told the date his clock began to run. The Complaint is timely, and this Court should not dismiss for lack of jurisdiction.

55

Wormuth's arguments below, which were rejected by the district court, contravene the direct holding and policy of *Missirlian*. ER-8 n.2. Wormuth argues that a *pro se* plaintiff should have known that the agency's inaction of 40 days after the AJ's Judgment initiated a *subsequent* 90-day clock to file a civil action in district court. If that sounds confusing, it's because it is. And Wormuth expected Parker to navigate that scheme. ER-101-02. Under *Missirlian*, Parker's 90-day clock never commenced because he was never told the date that would happen. 662 F.2d at 550. EEOC's failure to notify him falls well short of the "clear indication" required by this Court to start the clock. *Id.* So when he filed his Complaint on September 27, 2022, Parker's Complaint was in time.

## CONCLUSION

The district court's judgment should be reversed and remanded so that Parker's complaint can be reinstated or amended and considered on its merits.

Date: November 8, 2024

> PETER AFRASIABI
> One, LLP
> 23 Corporate Plaza, Suite 150-105
> Newport Beach, CA 92660
> T: 949-502-2871
> pafrasiabi@onellp.com
>
> KATHRYN MARIE DAVIS
> Law Office of Kathryn M. Davis
> 530 South Lake Avenue, Suite 425
> Pasadena, CA 91101
> T: 626-356-8059

56

Kathryn.davis@kmdavislaw.com

JULIUS P. ELBERFELD
NEIL K. VERMANI
U.C. Irvine School of Law
Certified Law Students, Appellate
Litigation Clinic
401 East Peltason Drive, Suite 1000
Irvine, CA 92697
Email: jelberfe@lawnet.uci.edu
nvermani@lawnet.uci.edu

/s/ Kathryn M. Davis,
*Pro Bono Counsel for Appellant*
*James Parker*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)**: 23-35510

I am the attorney or self-represented party.

**This brief contains 12,828 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ● ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

   [ ] it is a joint brief submitted by separately represented parties.
   [ ] a party or parties are filing a single brief in response to multiple briefs.
   [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** _/s/ Kathryn M. Davis_____ **Date** November 8, 2024
*(use "*s/[typed name]*" to sign electronically-filed documents)*